JOSEPH BINNS *v.* EDWARD STOKES.

This court should in every instance where it can possibly be done, confine its action to a review of the case as it was tried below, and should never tolerate objections made for the first time here; and if they are such as could have been waived by agreement of the parties, either express, or implied from their conduct on the trial before the jury, it will be presumed they did waive them.

The court will notice errors to a party's prejudice, but those which he could waive and which it is presumed he did waive, are not considered to his prejudice.

The object of evidence is to make clear, demonstrate, and ascertain the very truth of the fact or facts in issue.

Where the publication of a libel has been admitted by the pleadings or established by proof, the law presumes that the defendant was actuated by malice, *unless the facts appearing in the publication itself, and connected with the charge* against the party, repel that presumption.

Where one party merely utters or publishes a report of another which had been already circulated and generally credited by the community, the party so publishing, having had nothing to do with the origination of the report, then proof to that effect, to show want of malice in the publication, may be adduced to the jury in mitigation of damages.

But where the party offering such proof was himself the first to make the charge against such other person, and then gives publicity to it, such proof in mitigation of damages is not admissible.

IN error from the circuit court of Kemper county; Hon. John Watts, judge.

This was an action instituted in the circuit court of Kemper county, by Edward Stokes against Joseph Binns, for a libel published by Binns in an advertisement in a newspaper called the Columbus Democrat, in advertising a negro boy, who had run away' from defendant Binns, in which he stated that he had reasons to fear that the negro was stolen by a man named Edward Stokes, and then gave his reasons for saying so; first, that Stokes had been seen with the boy on several occasions when no other white person was near; and, second, that Stokes was lounging about without one cent of money, and no honest means of procuring any.

Binns pleaded justification, to which the counsel for Stokes

only replied to a portion of said answer, and the balance was not replied to. The defendant Binns, proved that Stokes had been staying about the town of De Kalb for some time, and then offered to prove that Stokes had been boarding with one Poole, and had left without paying his .board, and that he, Binns, said when he learned that Stokes had left in that way, that he, Binns, would rather have paid the board himself, than that Stokes should have left without paying; but the court below ruled this out. Binns also offered to prove the general belief in De Kalb that Stokes had stolen said negro; but the court ruled this evidence out.

The plaintiff Stokes, proved the publication of the libel. The jury rendered a verdict against Binns for $500, when he prayed a writ of error to this court.

*D. P. McAllum* for appellant.

The first error assigned is, that the court below allowed plaintiff to go to trial without replying to the defendant's answer in bar. *Price* v. *Sinclair*, 5 S. & M. 254. The answer of defendant denied every material allegation of the complaint, and then alleged that he was justifiable in publishing said supposed libel; that he had so acted as to cause defendant to believe that he had stolen said negro, all of which said plaintiff admitted, (act changing pleadings, 1850, 5th and 10th sects.,) and the said plaintiff admitting that the defendant was justifiable in speaking and publishing the words complained of by his own (plaintiff's) conduct admitted himself out of court, and was not entitled to any thing.

2d. The court refused to permit defendant to prove that he, defendant, was on friendly terms with said plaintiff only a short time before said publication. Now malice is the gist of the action of libel or slander, and without malice there can be no libel. And what more friendly act could defendant do than offer to pay plaintiff's board after plaintiff had absconded without paying it? Yet, though this would have been strong proof of want of malice, the court ruled it out.

3d. Error consisted in ruling out the evidence offered by defendant on trial, that when the publication was made, it was

the general opinion in De Kalb, that plaintiff had stolen the negro. *Vick* v. *Whitfield*, 2 Hay. 222; *Deevit* v. *Greenfield*, 5 Ham: 275; *Eastland* v. *Caldwell*, 2 Bibb, 21; *Callaway* v. *Middleton*, 2 A. K. Marsh. 372; *Sawyer* v. *Hopkins*, 9 Sheply. 218.

4th error complained of was the admission of parol testimony to prove the contents of a written libel. Now the charge was, that defendant had published in a newspaper in the town of Columbus, a libel, etc. The libel should have been produced and proven like any other written document, and that parol evidence could not prove its existence, unless lost, is the plainest principle of the law of evidence.

*Geo. L. Potter* for appellee.

It is plain that this evidence was properly excluded. It did not tend to prove the truth of the publication, or to justify it; nor did it conduce to prove a want of malice. There is not a particle of proof to justify the publication or to mitigate damages. Professions of good will or of a charitable feeling, do not tend to show that the publication of a false charge is not malicious. If Binns had shown that, at the time of the libel, he was on the most intimate and friendly terms with Stokes, and had paid money to or for him, such proof would not tend to disprove malice in the publication of such a libel, but rather the reverse. Malice in the publication of a libel does not imply personal ill-will against the party libelled. *Commonwealth* v. *Bonner*, 9 Met. 410.

The next exception is the exclusion of proof to show that at the time the publication was made, it was the general belief in De Kalb that Stokes had stolen the slave. This proof was properly excluded. It was no excuse and was not admissible in mitigation of damages caused by a publication in the town of Columbus. Binns himself may have caused that belief. The weight of authority is clearly against proof of common belief or common report in cases of libel or slander; but it was never pretended that defendant could, for any purpose, show the report or belief in a village when sued for a libel published in a distant locality. *Long* v. *Brougher*, 5 Watts, 440; *Mat-*

*son* v. *Buck,* 5 Cow. 444; *Kennedy* v. *Gifford,* 19 Wend. 301; *Kellogg* v. *Cary,* 3 Penn. 102; *Bradley* v. *Gibson,* 9 Ala. 406; *Waithman* v. *Weaver,* 12 Petersdorf, 156; *Cole* v. *Perry,* 8 Cow. 214; 2 Wheat. Selw. 1283.

It is well settled that no such evidence can be offered where the defendant has reduced the slander to writing and published it. *M'Gregor* v. *Thwaites,* 10 E. C. L. R.; 9 Hay.; *Lewis* v. *Walter,* 6 E. C. L. R. 537, *et seq.*

The publication is clearly libellous, and defendant cannot escape under the words, "I have reason to fear." *Williams* v. *Carnes,* 4 Humph. 9; *Drummond* v. *Leslie,* 5 Blackf. 453; *White* v. *Nichols,* 3 How. U. S. 266.

*Welch* and *Baldwin* on the same side.

Mr. Justice FISHER delivered the opinion of the court.

This action was brought by the plaintiff below in the circuit court of Kemper county, to recover damages on account of an alleged libel published by the defendant below, charging that he had "reasons to fear that his slave had been stolen" by the plaintiff.

The first error to which our attention has been called by the brief of the counsel for the plaintiff in error is, that the court below allowed the plaintiff to go to trial without replying to the defendant's answer in bar. There is a replication in the record which was manifestly intended to respond to the several answers of the defendant. It in general terms reaffirms the truth of what is alleged in the complaint. No objection, such as is now alleged by counsel, appears to have been made in the court below; and when made here for the first time, after a trial on the merits, the error must clearly appear to be such as affects the validity of the judgment itself, or it will not be noticed. The record presents an issue, and if not technically correct, we will suppose that the party waived the objection in the court below, and consented to go to trial on the issue as presented. This court should, in every instance where it can possibly be done, confine its action to a review of the case as it was tried below, and should never tolerate objections made

here for the first time, if they were such as could have been waived by the agreement of the parties, either express or implied from their conduct on the trial before the jury, or otherwise. The error should be one which was to the party's prejudice on the trial below; that which he could waive, and which we must presume he did waive, cannot be said to be to his prejudice, and will not therefore be considered by this court.

It is next objected that the court below erred in not permitting the defendant below to make the following proof before the jury in mitigation of damages, to wit, "that at the time he made said publication, it was the general belief in said town of De Kalb, that the plaintiff had stolen said slaves." By keeping constantly in view the definition and great object of evidence, the court can but seldom go wrong as to the rules which must regulate and determine its relevancy in almost every variety of case. It is to make clear, demonstrate, and ascertain the very truth of the fact or facts in issue. The publication of the libel having been admitted either by the pleadings or established by the plaintiff's proof, the law presumes that the defendant was actuated by malice, unless the facts appearing in the publication itself, and connected with the charges made against the plaintiff, repelled this presumption. The object of the defendant's evidence, was to rebut the presumption of malice. He, in effect, said that while it was true that he made the publication, and while the publication itself may have been untrue, yet inasmuch as the whole community in which the plaintiff at the time resided, believed him to be guilty of stealing the slave, that therefore he, the defendant, could not have been influenced by malice towards the plaintiff.

The question naturally arises, How did the community happen to form or express an opinion in regard to the guilt or innocence of the plaintiff? The defendant himself must in the nature of things have been the first to give publicity to the report. It was his own slave which had disappeared. He was interested in making the necessary inquiries, and communicating the facts stated in his publication to the inhabitants of the town, who may have believed that the facts were sufficient to warrant a suspicion at least, as to the guilt of the plaintiff.

The evidence, then, simply amounts to this, that the community believed the truth of the defendant's statements. If he had merely uttered or published a report which had already been circulated in regard to the plaintiff, and which had been generally credited by the community, the defendant having had nothing to do with its origination, then such evidence would have been entirely competent. But when the defendant is himself the first to make the charge, and to give publicity to the report, the rule is, and ought to be, wholly different. So far from such evidence palliating the wrong, and consequently tending to mitigate the damages, it rather tends to prove the very fact put in issue by the plaintiff, that his character has been greatly injured by the incautious and reckless statements of the defendant. The evidence only serves to show the defendant's capacity, by showing the estimation in which he is held by his neighbors, to inflict an irreparable injury upon the reputation of one less fortunate than himself. If the community believed the plaintiff guilty of stealing the slave, it was because they believed the defendant's charge to be true. If they so believed it, then it must be admitted that he had a capacity at least to inflict an injury upon the plaintiff in the same community. If the plaintiff's general character was such that his neighbors were ready and willing to believe any and every report concerning him, however grave the charge, or however recklessly made, the defendant still has no right to complain, for the plaintiff's general character is always a fair subject of inquiry in all actions of slander and libel, and we must suppose that if it was generally bad, independent of the libel, or alleged slander, the defendant would have so shown it before the jury, or if he omitted to do so, it was because it could not be successfully assailed. The defendant was, moreover, at liberty to prove the truth of every statement made in his publication; by so doing, the question would have been fairly submitted to the jury to say, whether the defendant had " good reasons to fear " that the plaintiff had stolen the slave, or whether the community had formed a correct opinion in regard to his guilt. Failing in this proof, however, or omitting to make it, the defendant wishes to shield himself by showing the opinion which the public had formed, instead

of showing the one which ought to have been formed in view of all the facts.  If his statements were untrue, then he misled the public mind.  If true, he should have selected the jury as the tribunal before whom to make his proof, and should not have resorted to public opinion to shield him, without showing that it had been by others, and not by himself against the plaintiff, especially when the nature of the transaction and all the circumstances so clearly pointed to the defendant as the first man who would have been likely to bring the matter to the public notice.

We are, therefore, of opinion that the court committed no error in excluding the evidence.

We are also of opinion that the court committed no error in excluding what the defendant said to Poole as evidence.  In the first place, it was the defendant's own statements, and in the second place, the evidence was wholly unimportant.  It proved nothing either way.

Judgment affirmed.