SHAW CLEANERS & DYERS, INC., Appellant, v. DES MOINES DRESS CLUB et al., Appellees.

No. 41467.

NOVEMBER 15, 1932.

REHEARING DENIED MARCH 20, 1933.

Fred F. Keithley, for appellant.

John Connolly, Jr., and Irvin Schlesinger, for appellees Des Moines Dress Club, Hyman E. Rubenstein, and S. Schlesinger.

Fred A. Little, for appellee Register & Tribune Co.

WAGNER, J.—The plaintiff in the petition alleges:

That it is a corporation organized and existing under the laws of Iowa, with its principal place of business in the city of Des Moines; that it is engaged in the dry cleaning business; that the defendant Des Moines Dress Club is a copartnership, consisting of the defendants Rubenstein and Schlesinger; that said firm is also engaged in the dry cleaning business in the city of Des Moines; that the defendant the Register & Tribune Company is a corporation organized under the laws of the state of Iowa, with its principal place of business in the city of Des Moines, and owns and publishes every Sunday morning the newspaper known as the "Des Moines Sunday Register," and every week day the newspaper known as the "Des Moines Tribune-Capital;" that "on Sunday, the 6th day of September, A. D. 1931, at the instance of all of the defendants, with malice toward the plaintiff, there was published in the 'Sunday Register' of that date, an advertisement, printed in large bold type, reading as follows:

" 'Garments Cleaned at Half-Price are only Half Cleaned

" 'When you buy cleaning for half price you get just what you pay for * * * half-way cleaning and pressing. Des Moines Dress Club prices are the lowest at which first quality workmanship can be produced. * * * The lowest at which a modern plant can be maintained * * * the lowest at which skilled experts can be hired. Don't be misled by half-price cleaning.

" 'Out-of-town work especially solicited.

" 'We pay return charges.

" 'Dial 4-4141

" 'Des Moines Dress Club.

" 'The careful Cleaners & Dyers

" '801 Grand Ave. Dial 4-4141.'

"At the time of said publication of said advertisement over the name Des Moines Dress Club, the plaintiff was and, for several weeks prior thereto, the plaintiff had been advertising in said news-

paper and otherwise, a cleaning sale, using the phrases, 'half price for the 2nd garment' and '½ price for Second Garment,' and at said time no other person or firm engaged in the cleaning business in the city of Des Moines and vicinity was advertising cleaning at half price, all of which was then well known to and by all of the defendants and the general public.

"Said advertisement over the name, Des Moines Dress Club, thus maliciously published by the defendants, was a libel of the plaintiff in that the matter printed therein referred to the plaintiff and to the business done by the plaintiff, in the false and defamatory sense that garments cleaned by the plaintiff at half price were only half cleaned, that the cleaning and pressing done by the plaintiff was only half done, and that the plaintiff did not maintain a modern cleaning plant or employ skilled experts and that the plaintiff was misleading its customers and patrons and said advertisement was so construed by the readers of said newspaper. Said advertisement so published was a malicious defamation of the plaintiff and of the plaintiff's business, tending to provoke the plaintiff to wrath and to expose the plaintiff to public hatred, contempt and ridicule, and to deprive the plaintiff of the benefits of public confidence, and to injure the plaintiff in its reputation, good will, business and trade.

"The publication by the defendants of said advertisement over the name Des Moines Dress Club was done with malice toward the plaintiff and was intended to and did injure the plaintiff and the reputation, good will, business and trade of the plaintiff. Because of said injuries, the plaintiff has suffered actual damages," etc.

In the second count of the petition, the plaintiff sets out the same allegations, except that it avers therein that the quoted advertisement hereinbefore referred to was published in the Des Moines Tribune-Capital on September 9, 1931. In an amendment to both counts of the petition, the plaintiff alleges as follows:

"Because of said publication, the patronage of the plaintiff through its several stores and mail orders was thereupon immediately decreased to the extent of at least $500.00 per week with a consequent loss of profits; and, because thereof, said decrease of patronage and profits has continued and will continue permanently. Because of the nature of the services rendered by the plaintiff to its patrons and customers, the great number of patrons and customers served and the small amount received from each patron or customer

for the services rendered by the plaintiff, it is impossible for the plaintiff to state the names of the individual patrons and customers lost and the respective amount of business lost from each patron or customer on account of said publication, but the plaintiff has thereby suffered a general loss of business and profits to said extent and said loss is continuing and will continue permanently. Because of said loss of business and profits, the plaintiff has suffered special damages to its business in the sum of $25,000.00."

To the petition as amended, the defendant filed the following demurrer:

"1. The petition on its face fails to state a cause of action in that the publication complained of is not libelous, and nothing is pleaded in the petition which would justify recovery.

"2. The petition fails to state a cause of action for the reason that the publication complained of is not a defamation of the plaintiff in the sense the term 'defamation' is used in the statute.

"3. The petition fails to state a cause of action in that there is nothing in the publication complained of tending to provoke the plaintiff to wrath, or expose it to public hatred, contempt, or ridicule, or to deprive it of the benefits of public confidence and social intercourse.

"4. The petition fails to state a cause of action in that there is nothing contained in the publication itself, or in the petition which would make the publication a libel upon the plaintiff."

This demurrer was sustained by the court. The plaintiff refused to further plead, whereupon plaintiff's petition was dismissed and judgment rendered against it for costs.

The first question for our determination is: As to the plaintiff, are the allegations of the petition as amended libelous *per se?* If this question should be answered in the affirmative, then the court was in error in sustaining the demurrer. Libel is defined by our statutory law as follows:

"A libel is the malicious defamation of a person, made public by any printing, writing, sign, picture, representation, or effigy, tending to provoke him to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence and social intercourse." See section 13256, Code 1931.

■ This statutory definition is applicable to civil actions for recovery of damages for libel. See Stewart v. Pierce, 93 Iowa 136, 61 N. W. 388; Gundram v. Daily News Publishing Company, 175 Iowa 60, 156 N. W. 840; Fey v. King, 194 Iowa 835, 190 N. W. 519; Sheibley v. Ashton, 130 Iowa 195, 106 N. W. 618. In Stewart v. Pierce (Stewart v. Young), 93 Iowa 136, 61 N. W. 388, 389, civil cases for damages, the court, after setting out the aforesaid definition of libel said:

"With this plain definition before us we need not refer to any of the many cases defining libel, but proceed to inquire whether this writing brings these cases within the terms of the statute."

In Sheibley v. Ashton, 130 Iowa 195, 106 N. W. 618, 619, this court declared:

"This definition [the statutory definition] has been held applicable to civil actions to recover damages as for a libel. Stewart v. Pierce, 93 Iowa 136, 61 N. W. 388. And every publication which comes within the statutory definition of libel is declared to be actionable per se; that is, upon proof of the publication, the law will presume the falsity of the matter charged, that the publication was with malice, and that some damage followed."

■ It will be observed that the language of the publication set out in plaintiff's petition is unambiguous. Under such circumstances, the question whether the publication relied upon is libelous per se is a question for the court. See Berger v. Freeman Tribune Publishing Co., 132 Iowa 290, 109 N. W. 784; Wallace v. Homestead Company, 117 Iowa 348, 90 N. W. 835; Gundram v. Daily News Publishing Company, 175 Iowa 60, 156 N. W. 840; Sheibley v. Ashton, 130 Iowa 195, 106 N. W. 618.

In Gundram v. Daily News Publishing Company, 175 Iowa 60, 156 N. W. 840, 841, we said:

"Whether a publication relied upon is libelous within this statutory definition, and is therefore libelous per se, is always a question for the court."

In Berger v. Freeman Tribune Publishing Co., 132 Iowa 290, 109 N. W. 784, 786, the court said:

"In another instruction the court submitted the question as to the libelous character of the article to the jury for its determination

as to whether or not the language was libelous per se. The rule about this matter is well settled. It is this: Where the defamatory matter is unambiguous, the question of its meaning and character is for the court."

In determining whether language is libelous per se, it must be viewed stripped of any pleaded innuendo. The meaning of the phrase "per se" is "taken alone, in itself, by itself." Words which are libelous per se do not need an innuendo, and, conversely, words which need an innuendo are not libelous per se. See Wallace v. Homestead Company, 117 Iowa 348, 90 N. W. 835; Salinger v. Des Moines Capital, 206 Iowa 592, 217 N. W. 555; Quinn v. Prudential Insurance Company of America, 116 Iowa 522, 90 N. W. 349; Kee v. Armstrong, Byrd & Co. (Okl. Sup.), 151 P. 572; 36 C. J. 1151.

In Wallace v. Homestead Company, 117 Iowa 348, 90 N. W. 835, 840, this court declared:

"An innuendo cannot extend the sense of the expressions in the alleged libel beyond their own meaning."

In Salinger v. Des Moines Capital, 206 Iowa 592, 217 N. W. 555, 557, we said:

"An innuendo cannot extend the expressions in an alleged libel beyond their ordinary meaning."

In 36 C. J. 1161, the author aptly expresses the thought in the following language:

"Words which are defamatory per se do not need an innuendo, and, conversely, words which do need an innuendo are not defamatory per se."

In Kee v. Armstrong, Byrd & Co. (Okl. Sup.) 151 P. 572, 574, the court declared:

" * * * * But we cannot agree that language which is not libelous per se can be made so by innuendo. [Citing Wallace v. Homestead Co., 117 Iowa 348, 90 N. W. 835.]"

In view of the foregoing authorities, it is quite clear that, in determining the question as to whether the allegations of the petition are libelous per se, we must consider only the unambiguous language of the published advertisement hereinbefore quoted, regardless of any pleaded innuendo.

 The appellees do not question the right of appellant to maintain an action for libel because of the fact that it is a corporation. That a corporation may maintain an action for libel, see Pennsylvania Iron Works Company v. Vogt Machine Company, 139 Ky. 497, 96 N. W. 551, 8 L. R. A. (N. S.) 1023, 139 Am. St. Rep. 504; Ridgeway State Bank v. Bird, 185 Wis. 418, 202 N. W. 170, 37 A. L. R. 1343. In the construction of statutes the word "person" may be extended to bodies corporate. See section 63 Code 1931.

 It will be noted that the published advertisement does not name the plaintiff, but it is averred in the petition that the advertisement was a libel of the plaintiff in that the matter printed therein referred to the plaintiff, etc. It is not necessary that the defendant name or directly refer to the plaintiff in the published article in order to constitute libel. See Overstreet v. New Nonpareil Company, 184 Iowa 485, 167 N. W. 669, 672; Codner v. Central Credit Rating Agency, 180 Iowa 188, 161 N. W. 657. In the Overstreet case we said:

"A person reading the entire matter said to have been taken from the 'Live Wire' might connect the discussion to and reasonably infer that it referred to J. W. Overstreet [the plaintiff]. * * * The characterization of a person by insinuation, allusion, imputation, or irony may be quite as certain and effective as though directly applied. * * * And in the case at bar, if the jury should find that plaintiff was intended, there is no escape from the conclusion that the article constituted a libel per se."

In an action for libel it is sufficient "to state the defamatory sense in which such matter was used, and that the same was * * * published concerning the plaintiff." See section 12412, Code 1931.

In Codner v. Central Credit Rating Agency, 180 Iowa 188, 161 N. W. 657, we declared:

"The plaintiff had a right to set it [the alleged libelous language] forth in his petition and to support it with a further allegation that it was used in a defamatory sense. Under Code, section 3592, [now section 12412, Code 1931] it was not necessary for the plaintiff to state extrinsic facts for the purpose of showing the defamatory sense or the application of it to the plaintiff. He was entitled to allege that the words were used in a defamatory sense, and to state the defamatory sense in which they were used as applied to

himself. The plaintiff did aver in his petition the defamatory sense in which he claims the words were used. He averred also that they were used in such defamatory sense falsely and with express malice and with intent to injure the plaintiff. These allegations are within the permission of our rules of pleading as set forth above. The defendant's demurrer necessarily admits these allegations."

It is thus apparent that for the purposes of the demurrer, the mere fact that appellant is not named in the published article is immaterial.

Our pronouncement in Fey v. King, 194 Iowa 835, 190 N. W. 519, 520, is controlling as to when in a civil action alleged libelous matter is actionable per se. We therein set out what is now section 13256, Code 1931, which is hereinbefore quoted. We therein pointed out that libel consists of two elements:

"(1) Malicious *defamation* of a person; (2) *publication* of such defamation by any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence or social intercourse."

We therein emphasized the requisite that both elements must concur, and that in order to constitute defamation, the alleged libelous matter must assail "the integrity and moral character of the injured party." Also see Salinger v. Des Moines Capital, 206 Iowa 592, 217 N. W. 555. Measured by this gauge, it cannot be said that the published advertisement in this case constitutes defamation. It does not assail or reflect upon the character or integrity of the plaintiff. Therefore, the alleged libelous language contained in the petition is not libelous or actionable *per se*, and the demurrer was rightly sustained unless by reason of the additional matters contained in the amendment to the petition, the plaintiff is entitled to recover special damages.

Since the alleged libelous language is not actionable *per se,* the plaintiff is in no event entitled to recover what is known as general damages. The question at this point is: Is the plaintiff under the averments of the amendment to his petition entitled to recover special damages? While a party may not be entitled to recover because of the publication of alleged libelous language as and for a libel, yet, under certain circumstances, he may recover for any special damage

caused thereby. See Hollenbeck v. Ristine, 105 Iowa 488, 75 N. W. 355, 67 Am. St. Rep. 306, and Hollenbeck v. Hall, 103 Iowa 214, 72 N. W. 518, 39 L. R. A. 734, 64 Am. St. Rep. 175. In Hollenbeck v. Hall, 103 Iowa 214, 72 N. W. 518, 39 L. R. A. 734, 64 Am. St. Rep. 175, a demurrer to plaintiff's petition sounding in libel was properly sustained. In Hollenbeck v. Ristine, 105 Iowa 488, 75 N. W. 355, 356, 67 Am. St. Rep. 306, the plaintiff brought an action upon the same publication and alleged as special damage growing out of the publication his discharge from employment. The trial court directed a verdict for the defendant. In reversing the trial court, we used as the basis of the reversal the following statement from Cooley on Torts (2d Ed.) p. 242:

"Besides the publications mentioned (referring to those libelous per se), any untrue and malicious charge which is published in writing or print is libelous when damage is shown to have resulted as a natural and proximate consequence."

We further said in the cited case:

"The name [libel] that plaintiff has given his action is of no consequence, provided he has stated sufficient facts to show a right of recovery."

Assuming, without deciding, that the publication in the instant case is sufficient to constitute an "untrue and malicious charge" for which there could be a recovery of special damages, there can be no recovery by plaintiff in the instant case, for the manifest reason that there is no sufficient plea of special damages. Special damages are such as the law will not infer from the nature of the words themselves, and all of the authorities agree that a plea of special damage must refer to some specific detailed loss. See Newell on Slander & Libel (4th Ed.) sections 751, 753, 754, 755, 757; Wilson v. Dubois, 35 Minn. 471, 29 N. W. 68, 59 Am. Rep. 335; Schaffhauser Bros. v. Hemmer, 152 Iowa 200, 131 N. W. 6; Gundram v. Daily News Publishing Co., 175 Iowa 60, 156 N. W. 840. A general allegation of loss of patronage in a gross amount and consequent loss of profits is not sufficient as an averment for special damages.

In section 755, Newell on Slander & Libel (4th Ed.), the correct rule is stated as follows:

"*An allegation stating generally that in consequence of the defendant's words the plaintiff has lost a large sum of money, or that*

*his practice or business has declined, is not sufficiently precise where the words are not actionable per se. The names of the persons who have ceased to employ the plaintiff, or who would have commenced to deal with him had not the defendant dissuaded them, should be set out in the statement,* and they themselves called as witnesses at the trial to state their reason for not dealing with the plaintiff. * * * If the plaintiff can not give the names of those who have ceased to deal with him, * * * he must fail in his suit, although there has in fact been a falling off in his business." (Writer's italics.)

In section 757, the same author states:

*"Loss of customers is special damage, and must be specially alleged and the customers' names stated,"* etc. (Writer's italics.)

In Wilson v. Dubois, 35 Minn. 471, 29 N. W. 68, 69, 59 Am. Rep. 335, in passing on this question, the court declared:

"* * * it is *indispensable* to allege and show a loss of sale to some particular person, for the loss of a sale to some particular person is the special damage, and of the gist and substance of the action. * * * If there is no such person, there is no cause of action; and it follows that the failure to name the particular person or persons to whom a sale could have been effected, if it had not been prevented by the disparagement, does not present a case of mere indefiniteness, *but of total absence of an allegation essential to the statement of a cause of action,—a lack of substance, not of form,* * * * *and therefore a case for a demurrer, rather than for a motion to make more definite and certain."* (Writer's italics.) Other authorities could be cited on this proposition.

The averment in the amendment that "it is impossible for the plaintiff to state the names of the individual patrons and customers lost," etc., is of no avail when the sufficiency of the averments to warrant recovery is under attack; but rather a confession on the part of the pleader of inability under the facts to state a case for special damages. If it is impossible to state the names, then it is likewise impossible to prove the case, based on special damages.

The publication of the advertisement is not libelous *per se* and the allegations of the petition as amended are insufficient to state a cause of action for special damages. Therefore the court was right in sustaining the demurrer.

Appellant's motion to tax to the appellees Des Moines Dress Club, Rubenstein, and Schlesinger the cost of printing the brief and argument filed by them, which motion was ordered submitted with the case, is hereby overruled.

The judgment of the trial court is hereby affirmed.—Affirmed.

STEVENS, C. J., and FAVILLE, DE GRAFF, and ALBERT, JJ., concur.